*18*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| TERRY DEWAYNE WILLIAMSON, | § | |
|     Plaintiff-Petitioner, | § | |
| v. | § | CIVIL ACTION NO. B-97-016 |
| | § | CRIMINAL NO. B-93-132-4 |
| UNITED STATES OF AMERICA, | § | |
|     Respondent. | § | |

United States District Court
Southern District of Texas
FILED

MAR - 8 2001

Michael N. Milby, Clerk of Court

## UNITED STATES' MOTION TO DISMISS
## MOTION TO VACATE UNDER §2255 AND ANSWER

The United States of America, by the United States Attorney for the Southern

District of Texas, files this Motion to Dismiss Motion to Vacate Pursuant to Section

2255 and Answer.

### ALLEGATION

Williamson contends he was sentenced in violation of the holding in *Apprendi*

*v. New Jersey*, 530 U.S. ___, 120 S.Ct. 2348 (2000)

### Statement of the Case

Williamson was charged in the United States District Court for the Southern

District of Texas, Brownsville Division, Criminal Number B-93-132-S2, with

conspiring to possess approximately 1,542 pounds of marihuana with intent to

distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846

(Cr.Doc.[1]133,p.2).   An information of prior conviction was filed prior to trial (Cr.Doc.213).  A jury found Williamson guilty as charged (Cr.Doc.232).  Williamson was originally sentenced to 360 months confinement, a five year term of supervised release and ordered to pay a $50 special assessment (Cr.Doc.311).   Williamson appealed his conviction to the Fifth Circuit, and it was affirmed in an unpublished opinion filed on August 7, 1995 (Cr.Docs.328, 396).

On January 29, 1997,  Williamson filed a motion to vacate sentence under 28 U.S.C. § 2255 raising six grounds (Cr.Doc.432; Cv.Doc.1).  Williamson claimed (1) this court improperly applied the career offender guideline to his sentence; (2) he was denied his right to testify; (3) his attorney failed to communicate a plea offer; (4) the jury should have been instructed on the defenses of entrapment and misprision of a felony; and (5) he was denied his right to effective assistance of counsel due to his attorney's failure to investigate, to litigate whether the career offender guideline should apply and due to his refusal to allow him to testify (Cr.Doc.432; Cv.Doc.1). This court granted the United States' motion for summary judgment and dismissed the motion in a written order (Cv.Doc.8).  Williamson moved for a certificate of appealability and this court granted it only as to the issues relating to application of the career offender guideline (Cv.Docs.10,11).  In a published opinion dated August

---

[1] "Cr.Doc." refers to the criminal docket entry; "Cv.Doc." refers to the civil docket entry.

2

17, 1999, the Court of Appeals for the Fifth Circuit addressed the issues permitted in the certificate of appealability. *United States v. Williamson*, 183 F.3d 458, 461 (5th Cir. 1999) (Cr.Docs.446,447; Cv.Docs.12,13). It concluded that the issue of whether the guideline had been misapplied was not cognizable under § 2255; but also found that Williamson had been denied effective assistance of counsel because his attorney failed to litigate that issue on appeal. *Id*. at 461-64. The court reversed the denial of relief under § 2255 and remanded for resentencing "under the then-applicable guidelines without the career offender enhancement." *Id*. The court noted that under Williamson's original base offense level, absent the career offender enhancement, his guideline imprisonment range would have been 140 to 175 months. *Id*. The court refused to address issues on which this court did not grant a certificate of appealability. *Id*. at n.11.

Williamson filed a brief in this court on August 31, 2000 (Cv.Doc.14). On the same day, this court resentenced Williamson within the guideline range, to 175 months confinement (Cr.Doc.445). The amended judgment reflects that this court adopted the presentence report which calculated Williamson's offense level at 28 and his criminal history category as VI, with a resulting guideline range of imprisonment of between 140 and 175 months (Cr.Doc.445). The amended judgment also reflects the reason for the point selected within the guideline range:

3

> The 1542 lbs. (699.45 kilograms [KG] of marihuana used as the basis to determine the base offense level almost surpassed the 400 KG to 700 KG marihuana range for that level. Therefore, a sentence at the upper end of the sentencing guideline is deemed appropriate. The sentence meets the sentencing objectives of providing just punishment, affords adequate deterrence, promotes respect for the law, and reflects the seriousness of the offense.

(Cr.Doc.445).

On January 22, 2001, Williamson filed a motion styled "Motion to Amend Motion to Vacate under 28 U.S.C. § 2255, claiming that under the Supreme Court's decision in *Apprendi*, his sentence should not have exceeded the five year statutory maximum authorized by 21 U.S.C. § 841(b)(1)(D)  (Cr.Doc.448; Cv.Doc.15).  He contends that amendment of his § 2255 motion is proper because:

> ... where he failed to raise these issues on direct appeal after resentencing due to the fact that he was never informed of his right to a direct appeal of the sentence in this case. Petitioner Williamson was resentenced through the mail from judgement [sic] of his court handed down on August 31, 1999, and this court failed to inform this petitioner of his right to appeal the judgement [sic].
>
> Furthermore, the Supreme Court had not Ruled on <u>APPRENDI</u> until June 26, 2000, therefore the new Rule was not available at the time this petitioner was resentenced, therefore the procedural default.

(Cr.Doc.448,p.8; Cv.Doc. ,p.8).

4

## Motion to Dismiss

The United States moves to dismiss Williamson's motion to amend his petition under 28 U.S.C. § 2255 on the ground that it is a successive petition and he has not obtained certification to file it by the court of appeals. "[A] successive § 2255 motion requires certification by the court of appeals prior to filing." *United States v. Rich*, 141 F.3d 550, 553 (5th Cir. 1998) (citing 28 U.S.C. §§ 2244, 2255). Although Williamson treats his motion as seeking redress after being denied an appeal from his resentencing, his claim is actually one of trial error. He claims that under the holding in *Apprendi* this court failed to submit a sufficient jury instruction relating to the quantity of drugs involved. As observed by the Court of Appeals for the Second Circuit, whenever a first petition under § 2255 succeeds in having a sentence amended (as occurred in this case),

> ... a subsequent 2255 will be regarded as a "first" petition only to the extent that it seeks to vacate the new, amended component of the sentence, <u>and will be regarded as a "second" petition to the extent that it challenges the underlying conviction or seeks to vacate any component of the original sentence that was not amended.</u>

*Galtieri v. United States*, 128 F.3d 33, 37-38 2d Cir. 1997) (emphasis added); *see also Pratt v. United States*, 129 F.3d 54, 62 (1st Cir. 1997) ("if the relief granted in response to an initial habeas petition addresses only the petitioner's sentence, he

5

customarily cannot re-petition after resentencing based on alleged errors affecting the underlying conviction").

Since Williamson seeks to vacate a component of the sentence that was not amended, his petition under § 2255 is successive. Indeed, under the law of this circuit, it is unlikely Williamson would have been able to raise his *Apprendi* claim at the resentencing. *See United States v. Marmolejo*, 139 F.3d 528, 531 (5ᵗʰ Cir. 1998) ("The only issues on remand before the district court are those issues arising out of the correction of the sentence ordered by [the appellate] ... court."); *see also United States v. Hass*, 199 F.3d 749, 752-53 (5ᵗʰ Cir. 1999) (following *Marmolejo*, but also distinguishing *United States v. Ticchiarelli*, 171 F.3d 24 (1ˢᵗ Cir. 1999)). Moreover, treating Williamson's current request for relief under § 2255 as a successive petition is consistent with the law prior to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA):

> Prior to the enactment of AEDPA, a "successive petition" for collateral relief was one which raised "grounds identical to those raised and rejected on the merits on a prior petition," and a "petition raising grounds that were *available* but not relied upon in a prior petition" could be dismissed on the ground that the petitioner "ha[d] abused the writ."

*In re Taylor*, 171 F.3d 185, 187 4ᵗʰ Cir. 1999)(emphasis added). Here, Williamson's *Apprendi* claim was clearly available to him prior to his resentencing. As the Court of Appeals for the Seventh Circuit recently observed in finding that a defendant had

failed to demonstrate cause for his procedural default in not raising an *Apprendi* issue

at trial, in the district court and on direct appeal:

> [T]he foundation for *Apprendi* was laid long before 1992. Other defendants had been making *Apprendi*-like arguments ever since the Sentencing Guidelines came into being, and in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), the Court addressed on the merits an argument along similar lines. Smith could have invoked the themes in *McMillan*, and for that matter *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), just as the Justices themselves did in *Apprendi*. *See Garrott v. United States*, No. 99-2921 (7th Cir. Jan.30, 2001). Thus Smith has not established cause; and for the same reason that he could not show plain error (if that were the right standard) he cannot show prejudice either.

*United States v. Smith*, ___ F.3d ___, 2001 WL 111590 (7th Cir. Feb. 8, 2001). Since

Williamson has effectively filed a successive petition under § 2255, he was required

to obtain a certification from the Court of Appeals prior to filing this petition. 28

U.S.C. §§ 2244(b)(3)(A) and 2255; Moreover, it is unlikely that Williamson will be

able to obtain such certification from the Court of Appeals, since his claim does not

meet the statutory requirements for a successive 28 U.S.C. § 2255 motion. *In re*

*Tatum*, 233 F.3d 857, 859 (5th Cir. 2000). The United States therefore moves this

court to dismiss Williamson's motion to amend his § 2255 as a successive petition.

### The *Apprendi* Claim is not Cognizable under § 2255

Assuming *arguendo*, that this court concludes that Williamson's petition is a

first petition under § 2255, it is not cognizable. In *Apprendi*, the Supreme Court

CutePDF - www.fastio.com

announced the limited rule that "'fact[s] that increase[] the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *United States v. Meshack*, 225 F.3d 556, 576 (5th Cir. 2000) (quoting *Apprendi*, 505 U.S. at ___, 120 S.Ct. at 2362-2363). In *United States v. Doggett*, 230 F.3d 160, 164 (5th Cir. 2000), this court held, in light of the fact that § 841 calls for a factual determination regarding the quantity of the controlled substance which significantly increases the maximum penalty, if the United States seeks enhanced penalties under § 841(b), "the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt."

In *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 1075 (1989), the Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Williamson's case became final 90 days from the affirmance of his conviction on August 7, 1995, when his time for filing a petition for writ of certiorari expired. *See United States v. Gamble*, 208 F.3d 536, 537 (5th Cir. 2000); Rule 13(3), Supreme Court Rules. Williamson's case was therefore final before *Apprendi* was decided on June 26, 2000. He must therefore demonstrate that the *Apprendi* rule falls within one of the *Teague* exceptions or he is precluded from raising his *Apprendi* claim in this § 2255 proceeding.

8

"The *Teague* rule that new criminal procedural rules cannot be applied retroactively on collateral review has two exceptions." *United States v. Shunk*, 113 F.3d 31, 35 (5th Cir. 1997). The first is "when the new rule places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'" *Id.* (citing *Teague*, 489 U.S. at 307, 109 S.Ct. at 1073). The second exception "is for those rules requiring the observance of procedures 'implicit in the concept of ordered liberty.'" *Id.* 311, 313, 109 S.Ct. at 1076, 1077).

In *Shunk*, the Court of Appeals for the Fifth Circuit held that the rule announced in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310 (1995), requiring the government to prove in a prosecution under 18 U.S.C. §1001 materiality to the jury, instead of the judge, did not meet the second *Teague* exception:

> ... As noted, rules requiring the observance of procedures 'implicit in the concept of ordered liberty' are 'watershed' rules, of which few have yet to emerge. Requiring the Government to prove materiality to the jury, instead of the judge, is not a 'watershed' rule of criminal procedure, even though *Gaudin* was a clear break with prior decisions. Obviously, the fact that the *Gaudin* rule is new does not necessarily make it 'watershed'. Furthermore, one can easily envision a system of 'ordered liberty' in which certain elements of a crime can or must be proved to a judge, not to the jury.

> In sum, *Gaudin* error does not meet the second *Teague* exception. *Accord United States v. Swindall*, 107 F.3d 831, 836 (11th Cir. 1997)("The *Gaudin* rule ... is not a watershed rule ... that alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding.").

ClkPDF - www.fastio.com

*Shunk*, 113 F.3d at 37.

The new rule announced in *Apprendi* requiring submission of certain sentencing facts to the jury for a finding beyond a reasonable doubt is no different that the new rule announced in *Gaudin* that materiality must be found by a jury and not a judge, therefore the analysis in *Shunk* should be controlling here. In fact, the Court of Appeals for the Ninth Circuit reached that conclusion in *Jones v. Smith*, 231 F.3d 1227, 1235-37 (9th Cir. 2000), and held that the *Apprendi* rule as applied to the omission of certain necessary elements from a state court information, was "neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial." That holding is in accord with the decision by the Court of Appeals for the Fifth Circuit in *In re Tatum*, 233 F.3d 857, 858 (5th Cir. 2000), that an *Apprendi* claim is not cognizable in a successive § 2255 motion because the Supreme Court did not expressly declare collateral availability of the rule or apply it in a collateral proceeding (citing 28 U.S.C. §§ 2244(b)(3)(C) and 2255 and *United States v. Rich*, 141 F.3d 550, 553 (5th Cir. 1998)). In addition, several district courts have concluded that the *Apprendi* rule does not fall within any *Teague* exception.[2] *See United States v. Johnson*, 126 F.Supp.2d 1222 (D.Neb. 2000); *United States v. Joseph, III*, ___

---

[2] To date, no appellate court has held that *Apprendi* applies retroactively on collateral attack. *See Garrott v. United States*, ___ F.3d ___ , 2001 WL 71075 (7th Cir. Jan. 30, 2001).

F.Supp.2d ___, 2000 WL 1789989 (E.D.La. Dec.5, 2000); *West v. United States*,123

F.Supp.2d 845 (D.Md. 2000); *United States v. Pittman*, 120 F.Supp.2d 1263 (D.Or.

2000); *but see United States v. Murphy*, 109 F.Supp.2d 1059, 1064 (D.Minn. 2000).

Williamson' claim would therefore not be cognizable even if this were his first

petition under 28 U.S.C. § 2255.

<u>Failure to Demonstrate Cause and Prejudice</u>

Assuming again *arguendo*, that the *Apprendi* rule does fall within a *Teague*

exception, Williamson must show both cause for his failure to raise this issue at trial,

and on direct appeal, and prejudice. *United States v. Frady*, 456 U.S. 152, 167-68,

102 S.Ct. 1584, 1594 (1982).  A showing of cause requires a showing of some

external impediment that prevented the petitioner from raising the claim. *See*

*McCleskey v. Zant*, 499  U.S. 467, 497, 111 S.Ct. 1454, 1472 (1991).  Even though

the law may have been settled against him on an issue, "the futility of raising an

objection ... cannot alone constitute cause for a failure to object at trial." *Engle v.*

*Isaac*, 456 U.S. 107, 130, 102 S.Ct. 1558, 1573 (1982).  Here, as in *Smith*, 2001 WL

111590 * 2, Williamson cannot demonstrate cause because the foundation for his

claim was laid long before his trial in 1993.

To show prejudice, Williamson must meet a higher standard higher even than

plain error. *Smith*, ___ F.3d at ___, 2001 WL 111590 *1.  He must show "not merely

11

that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1596 (emphasis in original).  Here, Williamson cannot meet that burden.  First, the amount and type of drugs involved was alleged in the indictment.  The indictment alleged that Williamson and others "did knowingly and intentionally conspire and agree together and with other persons known and unknown to the Grand Jurors to knowingly and intentionally possess with intent to distribute a quantity exceeding 100 kilograms, that is, approximately 1,542 pounds of marihuana, a Schedule I controlled substance.  In violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B)." (Cr.Doc.133,p.2).

With regard to Williamson's claim of error in the jury instruction, this is the type of error addressed by the Court in *Frady*, 456 U.S. at 168-75, 102 S.Ct. 1595-98. As the Court explained, to demonstrate prejudice, a defendant on collateral review must show more than what would be required to demonstrate plain error. *Id*. 456 U.S. at 166, 102 S.Ct. at 1593.  Further, the degree of prejudice from instruction error must be evaluated in the total context of the events at trial. *Id*. 456 U.S. at 169, 102 S.Ct. at 1595.  As the Court explained in *Frady*,

> "a judgment of conviction is commonly the culmination of a trial which includes testimony of witnesses, argument of counsel, receipt of exhibits in evidence, and instruction of the jury by the judge.  Thus not only is

12

the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction."

*Id.* (citation omitted).

In this case, Williamson was only charged in one count of the indictment (Cr.Doc.133,pp.1-5).    The record reflects that the jury was give a copy of the indictment during deliberations (See Cr.Doc.386,p.1155: objection to unredacted indictment going back with jury overruled).

In its instructions to the jury, this court referred to the counts in the indictment and explained that the conspiracy counts were distinguished from count one, the continuing criminal enterprise count, and that each conspiracy had as its objective the intent to distribute a specific quantity and type of drugs:

> Count No. 1, in effect, alleges that Mr. Fidel Valencia, all right, he has been accused of having engage in a Continuing Criminal Enterprise.
>
> A Continuing Criminal Enterprise entails the fact that an individual has engaged in a series of offenses that involve counts like that enumerated in 2, 3, 4 and 5.
>
> 2, 3, 4 and 5 are counts which allege conspiracies, where two or more persons engaged in a plan to violate the law.  And each one of these counts, like Count 2, makes reference that the purpose and the objective of the conspiracy was to possess, possess, remember that word, that is why I am taking this time, with the intent to distribute approximately 598 pounds of marijuana.

In Count 3, the Grand Jury states that the defendants named therein – not all defendants are named in each of these counts – engaged in a conspiracy to possess, with intent to distribute approximately 868 pounds of marijuana.

Count No. 4 alleges a conspiracy and it doesn't name all the defendants that are before you, just two defendants in that case, for possession, remember the word possession, with intent to distribute approximately 142 pounds of marijuana.

Count 5 alleges a conspiracy, and not all defendants are named therein, with the objective of possessing – what do we have? – the word possessing, with the intent to distribute approximately five kilograms of occaine. Five kilograms is more than ten or eleven pounds.

Each one of these counts, you see, constitutes a separate offense. ...

(Cr.Doc.386,pp.1030-31). Later, this court further instructed the jury that the object of the alleged conspiracies was possession of the controlled substance alleged:

Now, I told you that Counts 2, 3, 4 and 5 involve possession of controlled substances. And you should know that the predicate for each one of those, because each one alleges a conspiracy, and I going to define conspiracy to you very shortly, the predicate for that entails the offense of possession with intent to distribute a controlled substance. Marijuana, heroin, cocaine, all of these things are controlled substances.

The gist of possession with intent to distribute a controlled substance involves that a person knowingly and willfully possess a controlled substance with the intention to distribute it, pass it on to somebody else. Simply to pass it on to somebody else.

So what do you have? Counts 2, 3, 4 and 5 all alleged a conspiracy to possess with the intent to distribute a controlled substance.

2, 3 and 4 allege matters involving marijuana.

14

(Doc.386,pp.1036-37). In explaining the elements of count 2, this count incorporated the allegations in the indictment:

> What the Government must show beyond a reasonable doubt as to each one of the defendants named in Counts 2, 3, 4 and 5, for the particular count, are the following things before you can find any defendant guilty of the conspiracies alleged. Here is what the Government must prove to you beyond a reasonable doubt. Two things.
>
> Number one, that two or more persons in some way or manner came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment. That two or more persons engaged in a plan to violate the law.
>
> In addition to that, and remember these terms, that the defendant that you have under consideration knowingly and willfully became a member of the conspiracy. That the defendant that you have under consideration knowing and willfully became a member of that conspiracy.
>
> If the Government has proven that to you in any of the counts named, 2, 3, 4 and 5, then you should find the defendant that you have under consideration guilty. If the Government has failed to prove those matters to your satisfaction beyond a reasonable doubt, as to Counts 2, 3, 4 and 5, you should find the defendant that you have under consideration not guilty.

(Cr.Doc.386,p.1040) (emphasis added).

In closing argument, the prosecutor clarified that the allegations in the indictment corresponded to the various loads of marihuana; and, the Boston load involved 1,532 pounds of marihuana:

> Then the next element that we have to prove, five or more, organizer, substantial income, three or more loads, and we have charged him with

15

four: Boston, 1,542 pounds; Brownsville, 143 pounds; Joliet, Illinois, 868 pounds; and Brownsville, this is the plan, conspiracy, 500 kilograms of coke.

Now, if you find him guilty on three out of these four, any three, then we have proved – we have gotten this point. We have proven this element in Count No. 1. So you could actually, as you get back in the jury room, you could go back to the other counts first and then come back to Count 1. Because if you find Fidel Valencia guilty of three out of those four that are listed later on in the indictment, then we have proven these three loads.

(Cr.Doc.386,p.1056).   Later, the prosecutor pointed out the evidence linking Williamson (aka Butch), to the Boston load:

So let's go over each of these loads, starting with Boston. What do we have on Fidel Valencia there? You remember these videos?

First one he comes over and he is saying, come on, come on, we have got to go see this guy. He lives over there off of 803. You have got to go and explain to him what is going on. Why? Because they had just gone up there and tried to deliver the marijuana and what happened that day? They had gone and tried to deliver the marijuana just before this and it didn't work out. The agents up there had not permitted the informants to deliver the marijuana. So now they are having to explain. Everybody is upset. And so Butch, who is the man in charge of these people, these people are upset because they didn't get the marijuana.

And the guy who is taking the heat is Butch. So he is upset with Fidel Valencia. And so Fidel Valencia comes over and says, on that video, the first video, let's go talk to this guy and calm him down. You have got to explain to him what happened, why the marijuana didn't get delivered.

16

The second video, Butch comes over to the house. There has already been a meeting between them. He comes over that day and they talk about his situation.

(Cr.Doc.386,pp.1056-57). Later, the prosecutor referred to the fact that the marijuana involved in the Boston attempted delivery had been seized:

The seized marijuana is in and of itself evidence of the Boston load. There are photographs of it. 1,542 pounds of marijuana. That marijuana came from somewhere. That is evidence.

(Cr.Doc.386,p.1059). On direct appeal, the Court of Appeals for the Fifth Circuit analyzed the trial evidence linking Williamson to the Boston load:

The evidence at trial supported a finding that Williamson was a middleman who agreed to find buyers for Valencia's marijuana. At a videotaped meeting on December 5, 1991, Valencia told the informants of his intention to meet with Williamson to discuss the aborted delivery of the Boston marijuana load. Testimony at trial indicated that Valencia and Galvan later visited Williamson to discuss the Boston load. Then, in another videotaped meeting on December 8, 1992, Williamson himself told Valencia and the informants of his efforts to sell all or part of the Boston marijuana load to prospective buyers in Boston or Cincinnati. Williamson spoke on the tape about arrangements for the transfer of the marijuana to buyers.

Williamson argues that he negotiated possible participation in the conspiracy but that he never agreed to participate. On the tapes, Williamson explains why the deal with the buyers in Boston fell through and generally expresses uncertainty about finding a buyer. In the end, Williamson never consummated a transaction in Boston, and the marijuana transported to Boston was never actually delivered to a buyer.

However, Williamson's agreement to join the conspiracy was not based on an agreement to purchase marijuana but rather to serve as a

middleman and find a buyer for the marijuana. The tapes show that he agreed to engage in that activity. The fact that a purchase in Boston never occurred does not effect the existence of Williamson's agreement to participate in the conspiracy in his role as middleman. In a similar case, the Fifth Circuit found sufficient evidence of participation in a drug conspiracy where the evidence showed that a middleman knew of a drug delivery and had agreed to call a potential purchaser even though he never successfully contacted the purchaser to arrange the sale. United States v. Rena, 981 F.2d 765, 771 (5th Cir. 1993). The evidence against Williamson is at least as strong as the evidence supporting the conviction in that case.

(Cr.Doc.396).

It is apparent from the record that the quantity of marijuana involved in the Boston load, or the count two conspiracy, was not an issue in this case because the marijuana was seized and weighed (See Cr.Doc.384,pp.582,585,586: approximately 1500 pounds of marihuana flown to Boston on U.S. Customs airplane). Moreover, even though this court misspoke and stated that count two involved an allegation of 598 pounds of marihuana, the jury had a copy of the indictment. *See* p. 13, *supra.* In addition, that variance from the 1,542 pounds alleged in the indictment was not material for purposes of Williamson's *Apprendi* claim a finding of a conspiracy involving the lesser amount of 598 pounds would authorize a statutory maximum of 40 years. 21 U.S.C. § 841(b)(1)(B)(vii) (term of not less than 5 years and not more than 40 years for 100 kilograms or more of marihuana). Williamson's 175 month fell within that statutory range. Moreover, since the United States gave notice of an

enhancement for a prior conviction (Cr.Doc.213), Williamson's statutory maximum sentence was life imprisonment. 21 U.S.C. § 841(b)(1)(B) (if violation committed after final prior felony drug offense conviction, not less than 10 years nor more than life imprisonment). *See United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000) (sentencing court did not err by using prior convictions to enhance drug sentence even those prior convictions not submitted to jury).

Because the jury knew they could only convict Williamson of the conspiracy alleged and they knew from the indictment that the conspiracy alleged involved 1,542 (or at least 598) pounds of marihuana, the instructions were sufficient instructed to warrant application of § 841(b)(1)(A) under *Apprendi*. *See United States v. Leahy*, 82 F.3d 624, 631 (5th Cir. 1996) (claim of variance between indictment and instructions rejected where jury provided with indictment and told defendant not on trial for any offense not alleged in indictment); *United States v. Marroquin*, 218 F.3d 455, 457 (5th Cir. 2000)(argument of counsel and allegations in indictment demonstrated adequacy of jury instructions on direct appeal).  Further, since Williamson has failed to point to any evidence that the amount alleged of 1,542 pounds of marihuana was contested, if error occurred, it did not rise to the level of a fundamental miscarriage of justice. *See United States v. Slaughter*, 238 F.3d 580, 583-84 (5th Cir. 2001) (*Apprendi* error harmless where there was no evidence that could lead jury to conclusion that quantity

19

of drugs alleged in indictment was incorrect).    Williamson cannot show that any omission from the jury instructions regarding an explicit finding by the jury on quantity worked to his actual and substantial disadvantage. *See Frady*, 456 U.S. at 170-75, 102 S.Ct. 1596-98.

Finally, if Williamson could meet such an onerous burden, he is incorrect in his contention that if quantity were not found by the jury the statutory maximum is five years.  Although 21 U.S.C. § 841(b)(1)(D) addresses offenses involving less than 50 kilograms of marihuana, Williamson sentence was subject to enhancement under 21 U.S.C. § 851.  His statutory minimum would have therefore been 10 years. *See* 21 U.S.C. § 841(b)(1)(D).

## CONCLUSION

Based on the foregoing, Williamson's motion under §2255 should be dismissed

or, in the alternative, denied.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

KATHLYN G. SNYDER
Assistant United States Attorney
910 Travis, Suite 1500
P.O. Box 61129
Houston, Texas 77208-1129
(713) 567-9368
TBA No. 07839300

ATTORNEYS FOR RESPONDENT

21

## CERTIFICATE OF SERVICE

I, Kathlyn G. Snyder, Assistant United States Attorney, certify that a copy of

the above Motion to Dismiss Motion under § 2255 and Answer has been mailed on

March 8, 2001, to:

Terry Dewayne Williamson
No. 39570-079
P.O. Box 15530
Fort Worth, Texas 76119

KATHLYN G. SNYDER
Assistant United States Attorney

22